IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-26-FL

| | |
|---|---|
| JEFFREY PIASCIK, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| BIOMASS CONTROLS PBC a Delaware Corporation also known as Biomass Controls PBC Corp.; BIOMASS CONTROLS, LLC a Connecticut Limited Liability Company; JEFF HALLOWELL; and RICK WOJCIK, | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion to stay and compel arbitration or, in the alternative, to transfer venue. (DE 18). Plaintiff responded and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motion to stay and compel arbitration is granted.

**STATEMENT OF THE CASE**

Plaintiff commenced this action January 22, 2020, against defendants, who are alleged to be plaintiff's former employers, asserting claims for breach of employment agreement, for violation of the North Carolina Wage and Hour Act, and, in the alternative, for violation of the Connecticut Wage Statutes. Plaintiff, who asserts jurisdiction on the basis of diversity of citizenship, seeks damages, unpaid wages, liquidated damages, attorneys' fees and interest. Plaintiff attaches to the complaint as exhibits an employment agreement he executed on November 1, 2017 (the "Employment Agreement"), and an email regarding a compensation plan sent April 12, 2019.

Defendants filed the instant motion on March 10, 2020, seeking an order staying the present action and compelling arbitration before the American Arbitration Association ("AAA"). In the alternative, defendants move to transfer venue to the United States District Court for the District of Connecticut. In support of the motion, defendants rely upon an affidavit of defendant Rick Wojcik ("Wojcik"), who is the chairman of the board of defendant Biomass Controls, LLC ("Biomass"),[1] a Connecticut company with principal place of business in Connecticut.

Plaintiff responded in opposition to the instant motion on March 31, 2020, relying upon plaintiff's affidavit and a termination letter. Defendants replied on April 9, 2020, relying on correspondence between the parties and affidavits of Wojcik and defendant Jeffrey Hallowell ("Hallowell"), who is the chief executive officer ("CEO") of defendant Biomass.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Defendant Biomass is "engaged in the business of patenting technology for biosolids waste treatment." (Compl. ¶ 10).

Plaintiff, a citizen and resident of Wake County, North Carolina, executed the Employment Agreement, on November 30, 2017, which provides that, effective January 1, 2018, plaintiff is engaged by defendant Biomass as "President." (Employment Agreement (DE 1-1) at 2). Defendant Hallowell executed the Employment Agreement on behalf of defendant Biomass, on December 1, 2017. (Id. at 4).

According to the Employment Agreement, plaintiff "will report to the CEO with a dotted line to the Board of Directors," with duties including responsibility "to grow the business by

---

[1]  In the complaint, plaintiff refers to Biomass, together with defendant Biomass Controls PBC Corp, also known as Biomass Controls PBC, collectively as "Biomass." (Compl. ¶ 4). For purposes of the instant motion and order, the court also treats defendant Biomass as synonymous with defendant Biomass Controls PBC Corp., where defendant Biomass Controls PBC Corp., is alleged to be a successor by merger to defendant Biomass Controls, LLC. (See id. ¶¶ 2-3). Accordingly, all references to "defendant Biomass" in this order, even though expressed in the singular, refer collectively to both defendant Biomass Controls PBC Corp. and defendant Biomass Controls, LLC.

acquiring profitable projects and skilled talent to position [defendant Biomass] as the worldwide leader in the Sanitation Economy." (Id.). According to the Employment Agreement, plaintiff "will be responsible for day-to-day operations of the Durham North Carolina facility." (Id.).

With regard to compensation, the Employment Agreement states: "The Company shall pay to Employee[2] for the services to be rendered hereunder a salary equivalent to $200,000 annually." (Id.). It also provides for 15 days of paid vacation per year. (Id. at 3). The Employment Agreement further provides that "[e]ither the Company or Employee may terminate Employee's employment at any time . . . with or without cause," except as provided in a section of the Employment Agreement captioned "Change of Controls Compensation." (Id. at 2-3). In addition "[e]xcept as otherwise agreed in writing, neither the Company nor Employee shall have any further obligation to each other by way of compensation or otherwise." (Id. at 2).

An April 12, 2019, email from defendant Wojcik to plaintiff, copying defendant Hallowell, referenced as "Exhibit B" in the complaint, provides for a "Base Salary" for plaintiff of $100,000.00. (Compl., Ex. B. (DE 1-2) at 2). According to plaintiff, "[t]hat email provided for a restructuring of [plaintiff's] compensation, which included a decrease in his annual salary from $200,000 to $100,000." (Compl. ¶ 19). Defendants allegedly "made the changes in compensation set forth in Exhibit B retroactive to January 1, 2019." (Id. ¶ 20). According to the complaint, plaintiff's "paychecks following his receipt of Exhibit B were either withheld entirely or decreased below the $100,000/year pay rate in order to reimburse Biomass for what Defendants characterized as an overpayment of [plaintiff's] salary from January 1, 2019 through April 12, 2019." (Id.).

Plaintiff alleges that "[t]he decision to reduce [plaintiff's] annual salary as reflected in Exhibit B was made unilaterally by Defendants." (Id. ¶ 21). Plaintiff "never agreed to a reduction

---

[2] The term "Company" is defined in the Employment Agreement as "Biomass Controls, LLC" and "Employee" is defined as plaintiff. (Employment Agreement (DE 1-1) at 2).

3

in his annual salary to $100,000." (Id. ¶ 22). "At no time have the parties ever executed any written instrument amending, supplementing, cancelling or discharging the terms of the Employment Agreement." (Id. ¶ 23). According to the complaint, plaintiff "was involuntarily discharged from his position effective October 3, 2019." (Id. ¶ 24). "As of the date of termination," plaintiff allegedly "had 74 hours of accrued, unused vacation time remaining for the year 2019 and 112 hours for 2018." (Id. ¶ 25). Defendants allegedly owe, but have not paid, plaintiff for such vacation time and plaintiff's allegedly unpaid wages, upon plaintiff's demand therefor. (Id. ¶¶ 26-28).

The Employment Agreement includes the following arbitration clause (hereinafter "arbitration agreement"):

> **8. Remedies**
>
> (a) Arbitration — Company and Employee agree that if any disputes arise between them, the disputes will be submitted exclusively to binding arbitration in the US. This means that disputes will be decided by an arbitrator, rather than a court or jury, and that Employer and Employee waive their rights to a court or jury trial. This includes claims of wrongful discharge, discrimination, harassment, and any injury to physical, mental, or economic interests. Also, all disputes are covered by this Arbitration clause whether based on claimed violations of statutory, contractual, or common law rights.
>
> The only disputes between the Company and the Employee not covered by this Agreement are claims for unemployment insurance or workers' compensation, claims under the National Labor Relations Act.

(Employment Agreement (DE 1-1) at 3-4) (emphasis in original).

## COURT'S DISCUSSION

Section 3 of the Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

4

9 U.S.C. § 3. Section 4 authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 4 provides that, when presented with such a motion, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

In reviewing a motion to compel arbitration, the "court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 233 (4th Cir. 2019) (quotations omitted). If, however, the "'making of the arbitration agreement be in issue,' then 'the court shall proceed summarily to the trial thereof.'" Id. (quoting 9 U.S.C. § 4). The court is obliged to conduct a trial only "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof,'" under a summary judgment standard. Id. (quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

When faced with a motion to compel arbitration, the court analyzes only two "gateway matter[s]." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2006). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). Second, where the court concludes there is such an agreement, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

Here, the "gateway matter[s]" are satisfied with respect to the arbitration agreement contained in the Employment Agreement. Howsam, 537 U.S. at 83. First, the arbitration agreement is valid, where it is in writing and it is contained with the Employment Agreement that

5

plaintiff executed personally. (See Employment Agreement (DE 1-1) at 4). Second, the scope of the arbitration agreement is clear and broad, stating that "Company and Employee agree that if any disputes arise between them, the disputes will be submitted exclusively to binding arbitration in the US," and that "[t]his includes claims of wrongful discharge . . . an any injury to . . . economic interests." (Id. at 3-4). Further, "all disputes are covered by this Arbitration clause whether based on claimed violations of statutory, contractual, or common law rights." (Id. at 4).

Plaintiff's claim for breach of contract against defendant Biomass, based upon breach of the Employment Agreement, falls squarely within the scope of the arbitration agreement. Plaintiff's claims under the North Carolina Wage and Hour Act and the Connecticut Wage Statutes, against defendant Biomass, also fall squarely within the scope of the arbitration agreement because such claims are encompassed within the phrase "any disputes [that] arise between them," including claims for "injury to . . . economic interests" that are "based on claimed violations of statutory . . . rights." (Id. at 3-4).

In addition, while it is a closer question, plaintiff's claims under the North Carolina Wage and Hour Act and the Connecticut Wage Statutes, against defendants Wojcik and Hallowell, also properly fall within the scope of the arbitration agreement, even though defendants Wojcik and Hallowell are not parties thereto. As a general matter, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000). "It is well-established, however, that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006).

"One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." Id. "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of another's signature on a written contract precludes enforcement of the contract's arbitration clause when the party has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. (quotations omitted). "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395–96 (4th Cir. 2005) (quotations omitted). "Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Id.

Here, based upon the claims and allegations in the complaint and the terms of the Employment Agreement, plaintiff is equitably estopped from avoiding arbitration of his wage and hour act claims with defendants Wojcik and Hallowell. Multiple reasons support this determination. First, plaintiff asserts the same claims against defendant Biomass, which is a signatory to the Employment Agreement, on the basis of the same allegations and claim language. (See Compl. ¶¶ 34-46). Second, in support of his wage and hour act claims, plaintiff asserts specifically that defendants Hallowell and Wojcik "acted in the interest of Biomass in relation to [plaintiff]." (Id. ¶¶ 36, 37, 43, 44). Indeed, defendant Hallowell executed the Employment Agreement on behalf of Biomass, and the employment agreement references the reporting duties of plaintiff to the Board of Directors, of which defendant Wojcik is alleged to be chair. (Compl. ¶ 6; Employment Agreement (DE 1-1) at 2, 4). Third, the breach of contract claim and the wage

and hour act claims are substantially related in their subject matter, as they both concern the economic terms and conditions of plaintiff's employment.

Fourth, plaintiff alleges unified and interdependent misconduct by all defendants as his employers, where the breach of the Employment Agreement allegedly was brought about by defendant Wojcik's April 12, 2019, email to plaintiff, constituting a reduction in salary not authorized by the Employment Agreement. (Compl. ¶¶ 19-21). Plaintiff alleges that the decision to reduce his salary "was made unilaterally by <u>Defendants</u>." (<u>Id.</u> ¶ 21) (emphasis added). Plaintiff also alleges that "<u>Defendants</u> owed [plaintiff] for his accrued, unused vacation," and "<u>Defendants</u> have not paid [plaintiff] for his accrued, unused vacation." (<u>Id.</u> ¶¶ 26-27) (emphasis added). As such, there is no alleged factual distinction between the defendants for purposes of the wage and hour act claims.

In sum, plaintiff "raises allegations of substantially interdependent and concerted misconduct" by both the signatory, defendant Biomass, and the non-signatory officers Hallowell and Wojcik. <u>Brantley</u>, 424 F.3d at 396. Defendants Hallowell and Wojcik's participation in arbitration is essential given their roles as alleged co-employers of plaintiff and the top executives of defendant Biomass. Therefore, plaintiff's wage and hour claims against defendants Hallowell and Wojcik properly must be arbitrated, along with all of plaintiff's claims against defendant Biomass.

Plaintiff argues that his claims against defendants Hallowell and Wojcik are not properly subject to arbitration, citing North Carolina Court of Appeals decisions in <u>Ellen v. A.C. Schultes of Maryland, Inc.</u>, 172 N.C. App. 317 (2005), and <u>Smith Jamison Constr. v. APAC-Atl., Inc.</u>, 257 N.C. App. 714, 718 (2018). <u>Ellen</u> and <u>Smith Jamison</u>, however, are inapposite. In <u>Ellen</u>, the plaintiffs did not assert any breach of contract claims under agreements containing arbitration provisions, but rather asserted solely claims of "unfair and deceptive trade practices and tortious

8

interference with prospective business advantages." 172 N.C. App. at 318. In denying a motion to compel arbitration, the court noted that, unlike plaintiff in the instant case, plaintiffs in Ellen were "not seeking any direct benefits from the contracts containing the relevant arbitration clause, nor [were] they asserting any rights arising under the [] contracts." Id. at 322. Similarly, in Smith Jamison, the plaintiffs did not bring any claims for breach of a contract containing an arbitration agreement, but instead brought only claims for fraud, tortious interference, conspiracy and unfair trade practices. 257 N.C. App. at 718. Ellen and Smith Jamison thus are instructively distinguishable.

Plaintiff asserts several additional grounds for avoiding entirely the arbitration agreement in the Employment Agreement, each of which is insufficient to create a genuine issue of material fact as to the validity of the arbitration agreement, as set forth in turn below.

A.  Indefiniteness

Plaintiff asserts that the arbitration agreement is void for indefiniteness, because there was no meeting of the minds between plaintiff and defendant Biomass regarding material terms, including 1) the forum for arbitration, 2) the number of arbitrators, 3) the procedure for selecting arbitrator(s), 4) the specific rules to apply in arbitration, and 5) how the costs of arbitration will be shared.

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under North Carolina law,[3] in order for parties to enter into a contract, an "offer

---

[3] Plaintiff proposes that North Carolina law, rather than Connecticut law, governs the issues of contract formation raised in its opposition to defendants' instant motion. While defendants seek to apply Connecticut law regarding the validity of the Employment Agreement, where it includes a Connecticut choice-of-law provision, (see Employment Agreement (DE 1-1) at 4), the court perceives no material difference between North Carolina law and Connecticut law, and the parties cite none, regarding the applicable principles of contract validity discussed in the text. Accordingly, for purposes of the instant motion the court applies North Carolina law.

9

must be communicated, must be complete, and must be accepted in its exact terms." Yeager v. Dobbins, 252 N.C. 824, 828 (1960). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Boyce v. McMahan, 285 N.C. 730, 734 (1974) (internal quotations omitted). "[A] contract must be sufficiently definite in order that a court may enforce it." Brooks v. Hackney, 329 N.C. 166, 170 (1991). Accordingly, "a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness." Boyce, 285 N.C. at 734.

In addition to setting forth its terms with the requisite level of certainty, to be enforceable a contract must contain an expression of mutual assent. See Chappell v. Roth, 353 N.C. 690, 692 (2001). "To constitute a valid contract, the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce, 285 N.C. at 734; see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.").

In this case, the arbitration agreement in the Employment Agreement is a clear and definite agreement to arbitrate all disputes between plaintiff and defendant Biomass. For purposes of whether this court must stay the action and compel arbitration, the arbitration agreement contains all essential terms. As noted above, to compel arbitration, it is necessary only that there be "a valid agreement to arbitrate" and that "the specific dispute falls within the substantive scope of that agreement." Hooters of Am., 173 F.3d at 938. The arbitration agreement easily meets these requirements, where it states that "Company and Employee agree that if any disputes arise between them, the disputes will be submitted exclusively to binding arbitration in the US." (Employment Agreement (DE 1-1) at 3). Thus, the essential "question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,'" is settled by the plain terms of

10

the arbitration agreement. Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006) (quotations omitted).

The suggested additional terms by plaintiff are not essential to a binding agreement to arbitrate. Rather, the suggested additional terms concern "issues relating to the procedural aspects of the arbitration itself," which do not impact the arbitrability of the dispute. Id. at 425. This is especially true where "[t]he FAA's policy of favoring arbitration augments ordinary rules of contract interpretation, and requires all ambiguities to be resolved in favor of arbitration." Ashford v. PricewaterhouseCoopers LLP, 954 F.3d 678, 682–83 (4th Cir. 2020).

Regarding the issues of "the forum where arbitration would take place," "the number of arbitrators," and "the procedure for selecting the arbitrator(s)," (Pl's Mem. (DE 21) at 7), the FAA expressly provides a mechanism for determining forum and selection of arbitrators:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but <u>if no method be provided therein</u>, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then <u>upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require</u>, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and <u>unless otherwise provided in the agreement the arbitration shall be by a single arbitrator</u>.

9 U.S.C. § 5 (emphasis added). In addition, section 4 of the FAA provides that "proceedings, under such agreement [to arbitrate], shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

Accordingly, rather than requiring invalidation of the arbitration agreement, the issues raised by plaintiff may be resolved as provided in the foregoing sections of the FAA. In accordance therewith, there shall be a single arbitrator appointed, and the court will invite proposals by the parties concerning the selection of an arbitrator within this district. In the conclusion of this order, the court will direct the parties to confer to determine whether they can reach agreement on the

11

identity of an arbitrator, and to file a joint notice within 30 days of the date of this order specifying whether they have agreed on an arbitrator. If the parties have agreed on an arbitrator, they shall propose a consent order appointing such arbitrator to arbitrate the parties' dispute in accordance with this order and the terms of the arbitration agreement. If the parties cannot agree on an arbitrator, they shall each propose an arbitrator and provide their reasons for objection to the other parties' proposal. Thereupon, the court will enter such further order appointing an arbitrator pursuant to 9 U.S.C. § 5.

Next, with respect to the "specific rules that would apply in the arbitration proceeding," and "how the costs of arbitration would be shared," (Pl's Mem. (DE 21) at 7), these are also "'procedural' questions which grow out of the dispute and bear on its final disposition [that] are presumptively not for the judge, but for an arbitrator, to decide." Dockser, 433 F.3d at 425 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)); see, e.g., Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000) (holding that an "arbitration agreement's silence on the subject [of arbitration costs] . . . alone is plainly insufficient to render it unenforceable"); Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 306 (4th Cir. 2001) (holding that the "district court erred in finding that the arbitration agreement was unconscionable because of unknown cost, fees, and procedures").

In sum, there is no genuine issue of material fact as to the validity of the arbitration agreement due to the issues of indefiniteness raised by plaintiff. Therefore, plaintiff's objection to arbitration on these grounds must be rejected.

B.  Unequal Bargaining Power

Plaintiff asserts that the arbitration agreement is invalid due to "unequal bargaining power" between plaintiff and defendant Biomass, and due to the fact that the arbitration agreement "was never even mentioned in the parties' contract discussions, much less negotiated." (Pl's Mem. (DE

12

21) at 8). Neither asserted ground raises a genuine issue of material fact as to validity of the arbitration agreement in this case.

"A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362 (2008). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. at 103. "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id.

Here, plaintiff has not brought forth evidence of either procedural unconscionability or substantive unconscionability. While plaintiff asserts unequal bargaining power, the allegations of the complaint and plaintiff's affidavit demonstrate otherwise. Plaintiff was under no alleged pressure to enter into the Employment Agreement, and immediately prior to execution of the Employment Agreement, plaintiff "was employed for over 14 years as a Senior Research Scientist . . . earning approximately $150,000.00 per year." (Pl's Aff. (DE 21-1) ¶ 5). The Employment Agreement provides terms for employment of plaintiff in a high-level executive position. (Employment Agreement (DE 1-1) at 2). Plaintiff engaged in discussions and meetings about his potential employment with defendant Biomass over a period of months. (Pl's Aff. (DE 21-1) ¶¶ 7-10). Accordingly, there is no basis to infer unfair surprise, lack of meaningful choice, or unequal bargaining power.

Plaintiff's assertion of a lack of mention of the arbitration agreement in contract discussions, or lack of negotiation of the same, also are insufficient to establish procedural unconscionability. Plaintiff alleges he had an opportunity to review a draft of the agreement via email transmission before he signed it and emailed it back to defendant Hallowell. (Id. ¶ 10).

13

Plaintiff cites to no case law requiring specific discussion or negotiation of the terms of a written arbitration provision to avoid unconscionability.

In sum, in light of the foregoing, coupled with the plain terms of the Employment Agreement and the arbitration agreement contained within it, there is no basis upon which to find a genuine issue of material fact of invalidity based upon unequal bargaining power. Therefore, plaintiff's objection to arbitration on this ground must be rejected.

C.   Estoppel

Finally, plaintiff argues that defendant Biomass's alleged breach of the Employment Agreement estops defendant Biomass from invoking the arbitration agreement against plaintiff and frees plaintiff from any further obligation to perform under it. This argument is without merit.

As set forth above, the "legal principle underlying the theory of equitable estoppel rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." Am. Bankers Ins. Grp., 453 F.3d at 627. Under the circumstances of this case, estoppel applies against plaintiff, not to his advantage, where plaintiff is the party who relies upon the terms of the Employment Agreement to recover damages from defendant Biomass, but at the same time seeks to repudiate the arbitration agreement contained therein. If a plaintiff could assert estoppel in this manner against any defendant who allegedly breached an agreement containing an arbitration agreement, there would never be any basis upon which to apply an arbitration agreement covering disputes between the parties to the agreement, as here. Nothing in the law requires such a result here.

Plaintiff cites to McClure Lumber Co. v. Helmsman Const., Inc., 160 N.C. App. 190, 198 (2003), for the proposition that "[a]s a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further." But, the provisions in the Employment Agreement are all severable, in the event of

14

unenforceability of any provision therein. (Employment Agreement (DE 1-1) at 4). Thus, whether or not defendant breached the compensation terms in the Employment Agreement by unilaterally reducing plaintiff's salary as alleged, does not impact the independent enforceability of the arbitration agreement within the Employment Agreement.

Moreover, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate" contained within the contract. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70 (2010). "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Id. at 70–71 (quotations omitted). Thus, plaintiff must challenge the validity of the arbitration agreement itself to avoid arbitrating under its terms. See id. at 71. On this point, there is no allegation that defendants breached the terms of the arbitration agreement, such that they would be estopped from relying upon its terms. Cf. Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) ("Under the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'") (quoting 9 U.S.C. § 3).

In sum, plaintiff fails to demonstrate a genuine issue of fact that estoppel bars enforcement of the arbitration agreement in the Employment Agreement in accordance with its terms. Therefore, in accordance with § 4 of the FAA, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must "make an order directing the parties to proceed in accordance with the terms of the agreement" to arbitration "within the district." 9 U.S.C. § 4. The court will stay this action "until such arbitration has been had," and the court will invite proposals from the parties concerning the identity of an arbitrator, as set forth below, in accordance with sections 3 and 5 of the FAA. 9 U.S.C. §§ 3, 5.[4]

---

[4] Because the court grants defendants' motion to stay and to compel arbitration, the court does not reach defendants' alternative motion to transfer venue.

15

## CONCLUSION

Based on the foregoing, defendants' motion to stay and compel arbitration is GRANTED. This matter is STAYED, pursuant to 9 U.S.C. § 3, until completion of arbitration as ordered herein and in subsequent orders of the court. The parties are DIRECTED to proceed to arbitration in accordance with the terms of the arbitration agreement contained within the Employment Agreement attached to the complaint. (See DE 1-1 at 3-4). In accordance therewith, the court DIRECTS the parties to confer to determine whether they can reach agreement on the identity of an arbitrator, if any, and to file a joint notice within **30 days** of the date of this order specifying whether they have agreed on an arbitrator. If the parties have agreed on an arbitrator, they shall append to their joint notice a proposed consent order appointing such arbitrator to arbitrate the parties' dispute in accordance with this order and the terms of the arbitration agreement. Any such proposed consent order shall direct that the parties shall file a status report with the court regarding the status of the arbitration, every **90 days**, or upon completion of the arbitration, whichever is sooner. If the parties cannot agree on an arbitrator, they shall each propose an arbitrator and provide their reasons for objection to the other parties' proposal. Thereupon, the court will enter such further order appointing an arbitrator pursuant to 9 U.S.C. § 5.

SO ORDERED, this the 26th day of May, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge